IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARVIN ARMSTRONG, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. CIV-03-0255-C |
| | ) | |
| SHEILA C. BAIR, Chairman of the | ) | |
| Federal Deposit Insurance Corp., Inc.,[1] | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION & ORDER

Defendant Federal Deposit Insurance Corporation (FDIC)[2] has moved for summary judgment on all claims asserted by Plaintiffs Billy Carroll and Harvey Melton. Carroll and Melton responded, and the FDIC filed a reply.

BACKGROUND[3]

---

[1] Shelia C. Blair became the Chairman of the FDIC in June 2006. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted as a party to this action in place of the former Chairman.

[2] The Court has held that the Chairman of the FDIC, in his or her official capacity, is the proper defendant in this action. (Dkt. No. 18.) However, for convenience, the Court refers to the defendant simply as the FDIC.

[3] Local Rule 56.1(b) requires parties opposing summary judgment to state the number of the movant's facts that is disputed, if applicable. "All material facts set forth in the statement of the material facts of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party." LCvR 56.1(c). In their "Undisputed Material Facts" and "Disputed Material Facts," Carrol and Melton do not specifically refer to the numbered paragraphs in the FDIC's "Statement of Undisputed Material Facts." Without such specific reference, the Court's effort to determine what factual disputes exist has been hampered. Nevertheless, the Court has endeavored to treat as undisputed only those facts included in the FDIC's brief to which no mention is made in the Response and those facts presented in the Response that do not conflict with the FDIC's recitation.

Carroll and Melton, and the other individual Plaintiffs, filed this action complaining that the FDIC discriminated against them on the basis of age. Specifically, they contend:

> [S]ince the fall of 1995 to the present, the FDIC has continually violated the ADEA [(Age Discrimination in Employment Act)], 29 U.S.C. § 633a, through its discriminatory application of the selection practice governing its selecting officials' choices of candidates for senior-level promotions from "rosters of eligibles"–predetermined lists of the nine best qualified *alphabetically-listed* applicants for those jobs. Repeatedly and across all senior grade levels, the selecting officials constantly picked substantially younger, no more qualified employees instead of employees ages 40 and up.

(Pls.' Resp., Dkt. No. 135, at 1.) The specifics of the FDIC's application and selection process and Plaintiffs' allegations are detailed in the Court's order denying class certification. (Dkt. No. 124.) The Court will not repeat that extensive discussion here, except as to those facts that are relevant to this motion.

Carroll and Melton, who are 63 and 54 years old respectively, spent a considerable portion of their working lives at the FDIC. Carroll started in August 1969 as an Assistant Examiner in Little Rock, Arkansas. He continued to work in the Little Rock office until he retired (with a buyout) as a Grade 13 Examiner in December 2004. Melton joined the FDIC in October 1977, also as an Assistant Examiner. Like Carroll, Melton recently retired from the Little Rock office as a Grade 13 Examiner.

In 1997, Carroll and Melton each applied for a Grade 13 Team Leader position in the Little Rock office. Neither was selected. Instead, a much younger and allegedly less-qualified African-American man was selected. Both Carroll and Melton are white.

Following this selection, Carroll and Melton filed complaints of age and race discrimination.[4] They settled their claims related to those applications and any other predating discrimination with the FDIC on March 8, 2000. Thus, this action only concerns discrimination allegedly suffered by Carroll and Melton after March 8, 2000.

Since 1998, neither Carroll nor Melton have applied for any job at the FDIC. Carroll and Melton do not claim any age discrimination by immediate and second-level Little Rock supervisors. (Def.'s Mot., Dkt. No. 130, Ex. 3 at 22 and 34; Def.'s Ex. 4 at 32-33.) However, they claim that "[b]y the late 1990s and early 2000s, the FDIC had developed a reputation for discriminating in job-promotion decisions at senior levels based on age." (Pls.' Resp. at 7, ¶ 2.) Carroll and Melton testified that they were aware of senior-level positions being filled by younger, less experienced applicants and other "older" examiners were being pressured to retire or take a buyout. According to Melton, other examiners outside his region agreed that he would not receive a promotion. For these reasons, Carroll and Melton felt that, during the relevant time period, their age would preclude further advancement in the organization.

Plaintiffs' expert, Dr. Donald T. Gantz, has analyzed available data to determine whether disparities in job promotions and other "selections" relative to employee age existed within the FDIC from 1996 through 2003. He has determined that "for grades 11, 12, 13, 14 and 15 there are persistent patterns of higher selection rates for applicants under the age of

---

[4] Apparently, three other individuals who "posted" for the position but were also unsuccessful joined the complaint against the DOS Regional Director. (Def.'s Ex. 4, Carroll Decl. ¶ 3.)

40 when compared to the selection rates of similarly situated applicants who are 40 years and older." (Pls.' App'x, Dkt. No. 81, Ex. 62, Gantz Report at 1.) He summarizes "that there is an overall selection rate advantage for referred applicants who are under 40 years old." (Id. at 9.)[5] However, his report also states that for vacancies with grades 12, 13, and 14, applicants applying for those positions when the grade-level was higher (than the applicants' then-current positions) had a younger mean age than applicants applying for positions at grade levels lower (than the applicants' then-current positions). (Id. at 8.) In addition, despite the selection rate advantage observed generally, Gantz's analysis shows that applicants "40 and above" were sometimes successful over those "under 40." (See Gantz Report at 6-7, 9 & Table 8.)

## STANDARD

Summary judgment is proper only if the moving party shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Id. When deciding whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.

---

[5] In his report, Dr. Gantz explains that he was using the FDIC's classification of "referred" applications. (Gantz Report at 8.) An applicant was "referred" if he or she was placed on the "roster of eligibles." Thus, a "referred applicant" is deemed qualified for the position. (See Pls.' Br., Dkt. No. 71, at 31 & Order, Dkt. No. 124, at 10-11.)

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Simms v. Oklahoma ex rel. Dep't of Mental Health, 165 F.3d 1321, 1326 (10th Cir. 1999).  At the summary judgment stage, the Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial.  Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611 (10th Cir. 1994).  When the nonmovant will bear the burden of proof at trial, summary judgment is avoided only by going beyond the pleadings and presenting evidence sufficient to establish the existence, as a triable issue, of an essential and contested element of the case.  Perry v. Woodward, 199 F.3d 1126, 1131 (10th Cir. 1999).

## DISCUSSION

Plaintiffs advance disparate impact and disparate treatment claims based on "the FDIC's practice of using the specific factors, including interviews, prescribed by its Merit Promotion Plan ("MPP") to select from among the qualified applicants on the roster of eligibles."  (Pls.' Resp. at 1.)  Carroll and Melton claim that they were injured and have standing to assert these claims as deterred applicants because any application would have been a futile gesture.  In addition, Plaintiffs claim that the FDIC's practice of using the MPP factors created a hostile work environment.  (Id.)  The Court considers these claims below.

1.   Failure to Promote

The principal issue on summary judgment with respect to the promotion claims is whether Carroll and Melton may rely on the futile gesture doctrine to make out a prima facie case of age discrimination.  When an employer uses formal hiring procedures, a prima facie case for age discrimination based on the failure to promote requires, among other things, that a plaintiff actually applied for the position or put the employer on specific notice that he

sought the position. Bennett v. Quark, Inc., 258 F.3d 1220, 1228 & n.4 (10th Cir. 2001), overruled on other grounds as explained in Boyer v. Cordant Techs., Inc., 316 F.3d 1137, 1138 (10th Cir. 2003).  There is no question that the MPP used by the FDIC qualifies as a formal hiring procedure.  There also is no dispute as to whether Carroll or Melton applied for a promotion or any other position with the FDIC post-settlement:  they did not.  In addition, although Carroll and Melton indicate, contrary to Defendants' suggestion otherwise, that they were interested in other job openings and expressed that interest to other employees (Pls.' Resp. at 8, ¶ 6), that evidence is insufficient to have put the FDIC on specific notice that either sought a promotion to any specific position.  See Bennett, 258 F.3d at 1228 (finding conversation with manager in which plaintiff asked whether trainer position would constitute a promotion indicated only a "vague interest in the position . . . [and did] not indicate that plaintiff was seeking the position").  Thus, having failed to apply for any promotion after 1997 or to put the FDIC on specific notice that they sought particular positions, Carroll and Melton must resort to the narrow exception established by the futility doctrine to survive summary judgment.

The futile gesture doctrine has its roots in International Brotherhood of Teamsters v. United States, 431 U.S. 324 (1977), in which the Supreme Court carved out an exception for certain Title VII plaintiffs who had not applied for positions but sought an award of retroactive seniority.[6]  The Court explained:

---

[6] Although there appears to be some uncertainty about whether the futile gesture doctrine should apply in private non-class actions, the Court will assume that it does in deciding summary judgment.  See Brown v. Coach Stores, Inc., 163 F.3d 706, 711 (2d Cir. 1998).

> The effects of and the injuries suffered from discriminatory employment practices are not always confined to those who were expressly denied a requested employment opportunity.  A consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection.
>
> If an employer should announce his policy of discrimination by a sign reading "Whites Only" on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs.  The same message can be communicated to potential applicants more subtly but just as clearly by an employer's actual practices by his consistent discriminatory treatment of actual applicants, by the manner in which he publicizes vacancies, his recruitment techniques, his responses to casual or tentative inquiries, and even by the racial or ethnic composition of that part of his work force from which he has discriminatorily excluded members of minority groups.  When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application.

Id. at 365-66 (footnote omitted).  The futile gesture doctrine has since been extended to aid ADEA plaintiffs who failed to apply for a position.  See Bennett, 258 F.3d at 1228.  Such a plaintiff may establish a prima facie case of age discrimination upon a showing that:  (1) he would have applied "but for accurate knowledge of an employer's discrimination" and (2) that he would have been discriminatorily rejected had he actually applied.  Id. (citations omitted).

In this case, Carroll and Melton cannot satisfy that test because the anecdotal and statistical evidence on which they rely does not show that the FDIC consistently enforced a policy of refusing promotions to senior-level positions to those qualified applicants over the age of 40.  Dr. Gantz's analysis and conclusions show at most that "older" applicants, seeking vacant positions at their same grade level or higher, were at a relative disadvantage

as compared to younger applicants (i.e., under 40 years of age) in the years 1996 through 2003. However, these older applicants were sometimes successful and, in fact, for more than a few of the possible non-tied comparisons identified in Table 8, the percentage of selected applicants from the "under 40" group exceeded the percentage of selected applicants from the "40 and above" group.

 Carroll and Melton may well have been aware of a number of "older" applicants whose promotion bids were unsuccessful and become discouraged on that basis and their own negative experience at having been rejected for a position in 1997. (See Def.'s Ex. 3 at 23, 38, 99-100; Def.'s Ex. 4 at 116, 193, 202-04.) But none of that evidence satisfies their burden of showing that an application would have been futile, useless, or in vain.

 Poor odds is not the equivalent of futility. In an action involving the Veterans Reemployment Rights Act, the Fourth Circuit refused to extend the futile gesture doctrine, in part, based on uncontroverted evidence that "several" officers who had placed their names on the police department's waiting list (to be allowed to join the reserves) received permission to join. Fox v. Baltimore City Police Dep't, 201 F.3d 526, 535 (4th Cir. 2000). Thus, "putting one's name on the Department's waiting list seems not to have been, in the strictest sense of the word, futile." Id. Likewise, in a suit by television writers claiming industry-wide age discrimination in hiring in violation of the ADEA, another district court indicated at the class certification stage that it was "highly skeptical" that a deterred applicant theory could apply in any individual case in light of statistical evidence that members of the protected class held approximately one-third of the writing positions. Wynn v. Nat'l Broad. Co., 234 F. Supp. 2d 1067, 1097-1104 (C.D. Cal. 2002).

Here, there is simply no evidence that the FDIC's alleged policy of ageism was consistently enforced with respect to promotions of "older" employees or that the FDIC's selection process and practices produced consistent discriminatory results. Thus, Carroll's and Melton's failure to apply for any positions after 1997 is fatal. The evidence, even when taken in the light most favorable light to Carroll and Melton, does not suggest that either certainly would have been denied promotions because of his age.

Finally, Carroll and Melton do not appear to argue, as the FDIC suggests, that they might maintain a disparate impact claim apart from an application of the futile gesture doctrine. (See Pls.' Resp. at 12 ("Notably, the futile gesture doctrine applies whether the method of proving discrimination is disparate impact or disparate treatment.").) To the extent that they would, the Court agrees with the FDIC that such an argument is untenable. As non-applicants who have failed to show that applications would have been futile, Carroll and Melton were not, as a matter of law, injured by the particular employment practice in question. Therefore, they do not have standing to challenge the subjectivity of the MPP selection process that allegedly had a disparate impact on those 40 years old and above. See McCutchen v. Sunoco, Inc., No. 01-2788, 2002 WL 1896586, at *6 (E.D. Pa. Aug. 16, 2002). For these reasons, summary judgment is granted to FDIC on Carroll's and Melton's promotion claims.

2.   Hostile Work Environment

In their Response, Carroll and Melton note that they plead a "hostile-work environment theory," which the FDIC has not challenged on summary judgment. (See Pls.' Resp. at 10 n.3.) In its Reply, the FDIC explains why such a claim cannot survive. (See

Def.'s Reply, Dkt. No. 141, at 3 & 4.)  Carroll and Melton have not sought leave to file a surreply, despite having had ample time to do so.  Thus, the Court will consider the FDIC's arguments.  See Pippen v. Burlington Res. Oil & Gas Co., 440 F.3d 1186 (10th Cir. 2006) (explaining that the Court may not forbid the nonmovant from responding to new arguments raised in a reply brief if the Court relies on those arguments.)

A claim for hostile work environment because of age is actionable.  However, like other hostile work environment claims, to survive summary judgment, the claimant must show some factual basis that could support a finding that the workplace was "'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  MacKenzie v. City and County of Denver, 414 F.3d 1266, 1280 (10th Cir. 2005) (quoting Penry v. Fed. Home Loan of Topeka, 155 F.3d 1257, 1261 (10th Cir. 1998)).

> To evaluate whether a working environment is sufficiently hostile or abusive, [the Court at summary judgment must] examine all the circumstances, including:  (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance.  In addition, the environment must be both subjectively and objectively hostile or abusive.

Id. (citations omitted).

The FDIC argues that Carroll and Melton have complained only about their inability to secure a promotion and testified that they otherwise had good working relationships with management.  Thus, the FDIC contends that their hostile work environment allegations fail as a matter of law.  The Court agrees.  Although Carroll and Melton may have felt discouraged and even betrayed by what they perceived to be a "youth movement" within the

organization, they have no evidence that discriminatory ageism permeated their working environment or that it was either severe or pervasive. Thus, the FDIC is entitled to summary judgment on the hostile work environment claims as well.

## CONCLUSION

Accordingly, Defendant's motion for summary judgment on claims by Plaintiffs Carroll and Melton (Dkt. No. 130) is GRANTED. A judgment will enter at the conclusion of the case.

IT IS SO ORDERED this 23rd day of August, 2006.

ROBIN J. CAUTHRON
United States District Judge