IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

MARVIN ARMSTRONG, et al.,           )
                                    )
              Plaintiffs,           )
                                    )
v.                                  )          No. CIV-03-0255-C
                                    )
SHEILA C. BAIR, Chairman of the     )
Federal Deposit Insurance Corp., Inc.,[1]  )
                                    )
              Defendant.            )

## MEMORANDUM OPINION & ORDER

In anticipation of the upcoming bench trial on the remaining claims of certain

individual Plaintiffs, Plaintiffs have filed three motions in limine contained within the same

document. (Dkt. No. 205.) Defendant Federal Deposit Insurance Corporation ("FDIC")[2] has

filed its response(s). (Dkt. No. 219.) The matters raised by Plaintiffs are addressed in turn.

## I.     Defendant's Statistical Evidence

Plaintiffs challenge the reports of two defense experts as being unreliable and,

therefore, irrelevant.

> [T]he FDIC's analysis compares the impact of its job-selection decisions only
> between employees over age 40 versus to [sic] those under age 40–instead of
> employees over age 40 versus those substantially younger. In other words, the
> FDIC's analysis does not comply with the legal standard for measuring an
> ADEA [(American with Disabilities Act)] violation under *O'Connor* [v.

---

[1] Shelia C. Bair became the Chairman of the FDIC in June 2006. Pursuant to Federal Rule
of Civil Procedure 25(d), she is substituted as a party to this action in place of the former Chairman.

[2] The Court has held that the Chairman of the FDIC, in his or her official capacity, is the
proper defendant in this action. (Dkt. No. 18.) However, for convenience, the Court sometimes
refers to Defendant as the FDIC.

Consolidated Coin Caterers Corp.], 517 U.S. [308,] . . . 312 [(1996)]. Therefore, it is statistically irrelevant.

(Pls.' Mots. at 2.)  "In addition, the FDIC intends to rely on average-age data that, as discussed by the declaration of plaintiffs' expert, Donald Gantz, Ph.D., is also unreliable." (Id. at 2 n.1.)

Defendant contends that its statistical evidence is probative on issues raised in this case and should not be excluded.  The Court agrees.  Although Plaintiffs question the reliability of the experts' analyses and presumably the opinions rendered, Plaintiffs failed to make a proper and timely Daubert[3] challenge and, instead, offer only conclusory assertions in a one-page attack.  (See Dkt. No. 128, Scheduling Order.)  Under the circumstances, the Court is not persuaded that these reports should be excluded under Federal Rule of Evidence 702.[4]

Nor is the Court convinced that these opinions are not relevant.  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence

_____

[3] Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

[4] Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Certain statistical analyses may be of limited or no probative value on the ultimate issue of whether these Plaintiffs were intentionally discriminated against, but others clearly pertain to allegations made by Plaintiffs, such as the purported effort/policy to transform FDIC into a younger organization. Especially in the absence of a jury, the determination of what weight, if any, should be given to particular pieces of expert testimony and the sorting out of those experts' criticisms of one another is better left for trial. Therefore, Plaintiffs' first motion in limine is denied.

## II.   Judicial Determination that Former FDIC Chairman Repeatedly Lied Under Oath

Plaintiffs next argue that the judicial opinion <u>FDIC v. Hurwitz</u>, 384 F. Supp. 2d 1039 (S.D. Tex. 2005) ("<u>Hurwitz</u>"), should be admitted because it contains findings by the court that former FDIC Chairman Ricki Helfer "lied and engaged in dishonest and misleading conduct in the execution of her official duties." (Pls.' Mots. at 2.) Plaintiffs contend that portions of the <u>Hurwitz</u> decision, which imposed sanctions on the FDIC, "reflect[] on Helfer's character for untruthfulness" and are admissible under Federal Rules of Evidence 806, 405(a), and 404(b). (<u>Id.</u> at 2-3.) Defendant objects, challenging each of the grounds proffered.

Both sides have designated portions of Helfer's deposition for use at trial. Under Federal Rule of Civil Procedure 32(a)(3), use of her deposition is proper because Helfer is

more than 100 miles away.  Helfer's deposition testimony is not barred by the hearsay rule

because she is "unavailable."  Fed. R. Evid. 804(b)(1).[5]

Rule 806, regarding an attack or support of a declarant's credibility, provides:

> When a hearsay statement, or a statement defined in Rule 801(d)(2)(C),
> (D), or (E), has been admitted in evidence, the credibility of the declarant may
> be attacked, and if attacked may be supported, by any evidence which would
> be admissible for those purposes if declarant had testified as a witness.
> Evidence of a statement or conduct by the declarant at any time, inconsistent
> with the declarant's hearsay statement, is not subject to any requirement that
> the declarant may have been afforded an opportunity to deny or explain. If the
> party against whom a hearsay statement has been admitted calls the declarant
> as a witness, the party is entitled to examine the declarant on the statement as
> if under cross-examination.

As indicated above, Plaintiffs suggest that the <u>Hurwitz</u> decision is admissible because

it "evidences Judge Hughes's opinion that Helfer has a character for untruthfulness."  (Pls.'

Mots. at 3.)  Federal Rule of Evidence 405(a) permits "proof may be made by testimony as

to reputation or by testimony in the form of an opinion" in "cases in which evidence of

character or a trait of character of a person is admissible."   Under Rule 608(a), "The

credibility of a witness may be attacked . . . by evidence in the form of opinion or reputation,

but . . . the evidence may refer only to character for truthfulness or untruthfulness . . . ."

The <u>Hurwitz</u> decision may be fairly described as a scathing review of the FDIC's

decade-long pursuit of Mr. Hurwitz and the conduct of key FDIC personnel before and

---

[5] Defendant contends that because Helfer was deposed by Plaintiffs' counsel in this case that her testimony "may not even be 'hearsay' within the meaning of Evidence Rule 806 and Rule 32(a)(3) of the Federal Rules of Civil Procedure."  (Dkt. No. 219, Def.'s Resp. at 11 n.23.)  The Court does not consider this possibility because of Defendant's own hesitation and because it is not adequately explained.

during the litigation against him.  With respect to Helfer, the court found that she manipulated her staff to change a recommendation from not-sue to sue, ignored legal realities and advice because of a political agenda, was dishonest with the Board and the public, and lied in her deposition.  Although these findings certainly cast Helfer in an unfavorable light, they are not testimony or an "opinion" of a general character for untruthfulness.  To render such opinion testimony, a person must have personal knowledge and an opinion but does not need to know the person or her community.  United States v. Herder, 59 Fed. Appx. 257, 267 n.8 (10th Cir. 2003) (unpublished)[6]; but see SEC v. Peters, 978 F.2d 1162, 1170 (10th Cir. 1992) ("Opinions are formed from a complex mosaic that includes first-hand experiences, circumstantial inferences, and even hearsay rumors, anecdotes and opinions expressed by others.").  The Hurwitz court had substantial documentary evidence before it but never heard from Helfer directly; nor did it endeavor to extrapolate from the numerous illustrations of unsavory (and perhaps illegal) conduct to expressly opine on her character as a witness.

Instead of "evidencing" or "reflecting" such an opinion, the Hurwitz decision makes findings that Helfer took specific actions and characterizes those actions in terms that suggest she is an untruthful person.  Federal Rules of Evidence 806 and 608(b) permit inquiry into such specific instances of conduct on cross-examination to the extent that they are probative of the declarant's truthfulness or untruthfulness.  However, Rule 608(b) expressly prohibits

---

[6] This unpublished opinion is cited in accordance with Tenth Circuit Rule 36.3.

proof by extrinsic evidence.  The parties have not identified any Tenth Circuit case that addresses the relationship between these two rules.

However, the Third Circuit has held, contrary to Second Circuit authority relied upon by Plaintiffs, that Rule 806 does not modify Rule 608(b)'s ban on the introduction of extrinsic evidence in the context of a hearsay declarant.  United States v. Saada, 212 F.3d 210, 220-21 (3d Cir. 2000) (disagreeing with United States v. Friedman, 854 F.2d 535, 570 n.8 (2d Cir. 1988)).  This is true even if the declarant is unavailable and the ban effectively prevents the use of evidence of the declarant's prior misconduct as a form of impeachment. Id. at 221-22.  In Saada, the hearsay statement of a former judge was admitted as an excited utterance.  The question was whether two state court decisions ordering that now-deceased judge's removal from the bench and disbarment for unethical conduct and the factual details supporting those decisions, which reflected the unethical conduct, were admissible to attack his character for truthfulness.  The Third Circuit determined that the evidence was not admissible.  Id. at 222.

The Court agrees that to the extent that the Hurwitz decision is offered as evidence of specific instances of prior misconduct by Helfer, it is inadmissible.  Like the Third Circuit, the Court is not persuaded that the circumstances warrant departure from the clear directive of the evidentiary rules cited.[7]

---

[7]  Although Plaintiffs suggest that they had no opportunity to question Helfer about her conduct in the other case or the court's findings because the Hurwitz decision did not issue until after she had been deposed, even then, the discovery period in this action had not closed.

Furthermore, even if the decision itself were admissible–because the judicial findings contained therein were opinion evidence of Helfer's character as a witness or because extrinsic evidence of prior conduct may be used to impeach the character of an unavailable declarant–the Court would exercise its discretion to exclude such evidence.  The Court may exclude evidence admissible under Rule 608 if it fails the Rule 403 balancing test.  See United States v. Bedonie, 913 F.2d 782, 802 (10th Cir. 1990) (discussing Rule 608(a)). Federal Rule of Evidence 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  If this were not a bench trial, the danger of unfair prejudice and confusion of the issues would certainly support exclusion.  And even without a jury, the admission of this decision would no doubt invite delay, distraction, and an unnecessary foray into events that have no direct bearing on the issues at bar.

Finally, Plaintiffs' suggestion that the decision is admissible to prove "Helfer's *modus operandi* to act [to] achieve a policy goal in calculated disregard for federal law and to cover-up that conduct by dishonest and duplicitous conduct" (Pl.'s Mots. at 3) is unavailing. Federal Rule of Evidence 404(b) permits the introduction of evidence of prior wrongdoing, not to prove the character of a person in order to show action in conformity therewith, but "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Modus operandi evidence is admissible to prove identity.  See, e.g., United

States v. Mares, 441 F.3d 1152, 1159 n.3 (10th Cir. 2006), pet. for cert. filed, No. 05-11764 (June 21, 2006).

Plaintiffs seemingly suggest that Helfer was a moving force behind the discrimination alleged in this case. They argue: "the findings in Hurwitz should be admitted . . . as evidence of Helfer's *modus operandi* in implementing unlawful policies though [sic] unlawful means. Here, that policy is ageism against older, senior-level employees." (Pl.'s Mots. at 6.) However, Plaintiffs' description of her testimony is less piercing. In the Pretrial Report, they state that Helfer will provide testimony as to "the FDIC's plan to downsize the organization by ridding the organization of its older employees." (Dkt. No. 212, at 58.)[8] Nor do Plaintiffs reference any prior allegations depicting Helfer as orchestrator. It is also not apparent that actions taken in this case, by Helfer or others, have any relationship or connection to those specifically described in Hurwitz. Plaintiffs' failure to explain the suggested application of Rule 404(b) to the facts of their case prevents fuller consideration of the argument.

Accordingly, Plaintiffs' second motion in limine, regarding the judicial decision bearing on Helfer's character and past actions, is denied.

## III.   Judicial Determination that FDIC Attorney Engaged in Untruthful and Improper Conduct

Plaintiffs argue that they should be permitted to question John Thomas, a witness who is expected to appear and testify at trial, about the judicial findings in the Hurwitz decision

---

[8] Defendant lists Helfer as a witness who will testify as to "FDIC Board policies and meetings, prospective work load and staffing needs, and staff reductions." (Id. at 60.)

concerning him.  John Thomas was the selecting official involved in the non-selections of

one of the Plaintiffs.  In the <u>Hurwitz</u> decision, Thomas, an FDIC staff attorney, is described

as being less than forthcoming with the Board by not indicating that the staff had previously

recommended not to sue, crafting legally suspect or untenable claims, actively participating

in the unfounded/politically-motivated litigation, and revealing selective memory during his

deposition.  Plaintiffs contend that such evidence is admissible under Federal Rules of

Evidence 608(b) and 404(b).

   The Court agrees that Rule 608(b) does not prohibit questions about instances of prior

conduct that bear on a witness's character for truthfulness or untruthfulness.  The Court may,

in its discretion, allow such questions on cross-examination if they are probative of

truthfulness or untruthfulness.  Although questions based on conduct described in the

<u>Hurwitz</u> decision might be appropriate, admission of the decision itself is not permitted.

Fed. R. Evid. 608(b).  A recent Seventh Circuit opinion concerning the use of prior judicial

findings that a witness was not credible to impeach that witness and the relationship between

questions about and proof through extrinsic evidence is supportive:

> Rule 608(b) . . . would have allowed the judge to permit the defendants'
> lawyer in this case to ask the witnesses whether they had lied in two previous
> suppression hearings.  And there is nothing to suggest that the "inquiry" could
> not have extended to asking the witness whether a judge, say, had ever found
> him not to be a credible witness.  After referring to "specific instances of the
> conduct of a witness, for the purpose of attacking or supporting the witness'
> character for truthfulness," that may be inquired into on cross-examination,
> Rule 608(b) adds that such character "may not be proved by extrinsic
> evidence."  There would have been a problem in this case had the defendants'
> lawyer asked "has any federal judge ever found that you lied on the stand?"
> and when the witness answered "no" the lawyer sought to have the judge's

finding placed in evidence.  *That* would be "extrinsic evidence" and would be barred by Rule 608(b) if the evidence were being used to undermine the witness's "character for truthfulness."

United States v. Dawson, 434 F.3d 956, 958-59 (7th Cir. 2006).  A determination of what questions are appropriate and probative will be assessed in the context of Thomas's testimony and the presentation of evidence at trial and will be guided by Rule 403's balancing test.[9]

In sum, the Hurwitz decision itself is inadmissible under Rule 608(b).  However, the findings contained therein and the underlying facts may be appropriate fodder for cross-examination questions.  Plaintiffs' third motion in limine is denied as it requests a pre-trial ruling that the Hurwitz findings are admissible.

CONCLUSION

Accordingly, Plaintiffs' Motions in Limine (Dkt. No. 205) are DENIED.

IT IS SO ORDERED this 23rd day of February, 2007.

ROBIN J. CAUTHRON
United States District Judge

---

[9] Similarly, Thomas's actions and selective memory in the Hurwitz case might be relevant and proper topics for questioning, beyond the scope of Rule 608(b), if a proper foundation is laid.